## Appeal of THE TIMES-NEWS CO.

Docket No. 5088.   Submitted December 15, 1925.   Decided April 19, 1926.

Upon the facts, *held,* that certain payments were not ordinary and necessary expenses, but were distributions of profits.

*Evert L. Bone, Esq.*, for the taxpayer.
*George G. Witter, Esq.*, for the Commissioner.

Before Marquette, Morris, Green, and Love.

This is an appeal from the determination of a deficiency for the fiscal year ended September 30, 1920, in the sum of $12,798.93, of

which $10,804.44 is in controversy. The taxpayer alleges error on the part of the Commissioner as follows:

(a) Failure to allow as an expense a commission of $20,000, paid for negotiating the sale of the property of this corporation.

(b) Failure to allow as an expense the salary of R. T. Dobson, amounting to $3,863,17 for this year.

(c) Failure to allow as an expense sundry expenses during this year, amounting to $673.71.

(d) Failure to include as income for this year recoveries on bad debts previously charged off, amounting to $434.36.

The Commissioner admits the last three assignments of error but denies the first assignment of error.

FINDINGS OF FACT.

The taxpayer is a Michigan corporation, engaged in the business of publishing a daily newspaper at Ann Arbor.

In the year 1919, the taxpayer had outstanding 3,064 shares of capital stock, of which 3,062 were owned by R. T. Dobson; one share by J. A. Dobson (wife of R. T. Dobson); and one share by H. A. Whitker, a nephew. R. T. Dobson, the principal stockholder, was also general manager of the taxpayer. For some time prior to 1919 the said Dobson was in ill health and wished to be relieved of the responsibility of managing this business. A son, R. T. Dobson, Jr., had been assisting his father to some extent but did not desire to remain in the newspaper business. Several attempts had been made to sell the paper without success. Some efforts were made by its attorney, Prof. H. A. Wilgus, of the University of Michigan, to interest the Union Trust Co. with a proposition to operate the paper under a trusteeship.

In or about the month of September, 1919, the board of directors of the taxpayer, consisting of R. T. Dobson, J. A. Dobson (wife of R. T. Dobson), and H. A. Whitker (nephew of R. T. Dobson), passed a resolution authorizing the said R. T. Dobson, J. A. Dobson, R. T. Dobson, Jr., and Angela Dobson (wife of R. T. Dobson, Jr.) to sell its property and to be paid as compensation the amount received by the taxpayer in excess of $60,000. The pertinent parts of the minutes of the meeting of the board of directors are as follows:

Minutes of a meeting of the Board of Directors of The Times News Company, incorporated, held at the office of the company in Ann Arbor, Mich., at 10 o'clock, A. M., on the 11th day of September, 1919.

\*    \*    \*    \*    \*    \*    \*

R. T. Dobson moved that The Times News Co. authorize R. T. Dobson, Senior, J. A. Dobson, Russell T. Dobson, and Angela Dobson, or either of them to sell the property of The Times News Co., including the assets of every kind or nature of the said company including all trademarks, copyrights, fran-

chises, associated press membership, good will, subscription lists, books of account, subscription contracts, furniture, files and records, printing presses, lineotype machines, stereotyping machines, fixtures, cuts, photographs, scrapariums, libraries, type, galleys, composing tables, and cabinets, electric motors. appliances, tools, apparatus, paper, ink, and all other supplies and accounts and notes, bills receivable advertising contracts and name, and all other property of every kind for the sum of Sixty Thousand dollars, and that the said parties shall be entitled to whatever sum in addition they may sell the same for within the next thirty days, as a commission for their services in making the sale. Motion was seconded by H. A. Whitker and motion being put to vote was carried unanimously. On motion the board of directors adjourned.

(Sgd)      R. T. DOBSON        :
  "        J. A. DOBSON        ·
  "        HENRY A. WHITKER.

On the same day the stockholders, being also the directors, approved the action of the board of directors. The pertinent parts of the minutes of the said meeting are as follows:

Minutes of a meeting of the stockholders of The Times-News Company, Incorporated, held at the office of the company in Ann Arbor, Mich., at 7:30 o'clock, P. M. on the 11th day of September, 1919.

\*        \*        \*        \*        \*        \*        \*

R. T. Dobson, presented a resolution unanimously passed by the Board of Directors authorizing certain persons named therein, to sell all of the property, assets, good will, franchises, accounts, contracts, and interests of every kind and character for a sum of sixty thousand dollars, and agreeing to pay as commission for such sale if made within thirty days from the time named all sums over and above the aforesaid amount to the parties mentioned in the sale. Mr. Dobson moved that the shareholders approve action of the Board of Directors in reference to the sale of the property as the above resolution provides. On being put the motion was unanimously carried. Adjourned.

(Sgd)      R. T. DOBSON
  "        J. A. DOBSON
  "        HENRY A. WHITKER.

In the meantime the said Professor Wilgus had been negotiating with the Booth Publishing Co. to purchase the paper. Under date of September 12, 1919, he wrote a letter, a copy of which was given to R. T. Dobson, which reads as follows:

Mr. RALPH BOOTH,
    *Booth Publishing Co., Detroit, Michigan.*
MY DEAR SIR:

In accordance with my promise, upon my return to Ann Arbor this afternoon, I requested Mr. Dobson to send you at once copies of The Daily Times News, from September 2nd, until today, inclusive. He told me they would be sent this evening.

Mr. Dobson assures me that he can show you detailed monthly statements of income and expenditures, and assets and liabilities, for each month since he has controlled the paper, and will be glad to do so if you care to see them. I presume he can give you full information as to paid circulation, although I did not mention that to him. He will undertake to answer definitely any

question you may ask, if possible, relating to the business, if you should come out, or send some competent person. He requested me to ask you to communicate with me, or telephone him, when your representative may be here, in case one comes, in order that matters may be discussed at his house, rather than at the office. He will then arrange to inspect things at the office and the plant at a convenient time of the day.

In reference to the specific question you asked me, as to price, I answered you correctly that Mr. Dobson valued his property somewhat higher than the sum you named. He, however, had not contemplated cash payment in full. That makes some difference. And while I may be mistaken, I believe there is a probability, (as perhaps you may have inferred from what I said this morning), that if a check for the amount you named were available at one of the banks here, I could secure almost immediately an agreement to sell, and, if your examination proved satisfactory, I could have delivered to you a completed and properly executed bill of sale of the property as a going concern, free and clear of all incumbrances, and the possession of the same, together with a lease of the part of the building used by the newspaper, for a term of some years, at a reasonable rental, and also with a further agreement that Mr. Dobson would not engage in the newspaper or printing or publishing business here or elsewhere, directly or indirectly, if such were desired.

If I can be of any service in giving further information or otherwise, I will be glad to do so.

The negotiations resulted in the sale of the business of the taxpayer to the said Booth Publishing Co. in October, 1919, for $80,000. Under date of September 30, 1919, the minutes of the board of directors pertinent to the sale read as follows:

Minutes of a meeting of the Board of Directors of The Times News Company, incorporated, held at the office of the company in Ann Arbor, Mich., at 11 o'clock, P. M. on the 30th day of September, 1919.

\*        \*        \*        \*        \*        \*        \*

R. T. Dobson presented a proposition for the purchase of all of the property of The Times News Co. from the Booth Publishing Company of Detroit for the sum of Eighty Thousand dollars, the said property to include all of the assets of every kind or nature of said company * * * Mr. Dobson moved that the proposition be accepted and the officers of the corporation be authorized upon the approval of the shareholders to make, execute, and deliver whatever paper and documents may be necessary and proper to complete the sale and transfer of said property to said The Booth Publishing Company of Detroit, Mich., that said Times News Co., be dissolved and its affairs wound up as of the date of September 30th, 1919; * * * that R. T. Dobson shall be trustee for the purpose of receiving the consideration mentioned for the Company and carrying out the provisions of the terms of the sale and accounting to the parties interested for the amounts due them and for making the payment of commissions for the sale as agreed upon; and that this resolution be submitted to the shareholders for their approval. The motion was seconded by H. A. Whitker and upon being put to vote was unanimously carried.

On motion the Board of Directors adjourned.

|  |  |
|---|---|
| (Sgd.) | R. T. Dobson, |
| " | J. A. Dobson, |
| " | Henry A. Whitker. |

Under the same date the minutes of the stockholders' meeting showed a formal ratification of the action of the board of directors respecting the sale.

A commission of $20,000 was paid to the four persons mentioned in the resolution of September 11, 1919, in the sum of $5,000 each; and said commission was deducted by the taxpayer from its gross income for the fiscal year ended September 30, 1920. The amount of the commission was disallowed as such deduction by the Commissioner and added to income, resulting in the deficiency in controversy.

OPINION.

LOVE: The Commissioner has conceded all the assignments of error, except the one relating to the alleged $20,000 commission, so that the sole issue remaining is whether or not said amount is a proper deduction from income as an ordinary and necessary business expense.

The taxpayer insists that it has the legal right to dispose of its assets and deduct a commission for such sale as an ordinary and necessary business expense, and further points out that it has conformed to all the formal and legal prerequisites in the form of directors' and stockholders' resolutions. The taxpayer also urges that the corporate entities should be preserved throughout and that the relationship of the stockholders, directors, and the parties receiving the alleged commission should be disregarded. With these general principles we do not disagree, but to our minds there are some very apparent facts in this proceeding that put the taxpayer beyond the pale of these principles and force us to look into the true significance of the transaction.

The taxpayer would have us believe that, at the time of the resolution authorizing the commission, there were no prospective sales in sight and that Professor Wilgus subsequently, while on his trip to negotiate with the Union Trust Co., came in contact with the Booth Publishing Co., which ultimately purchased the assets of the taxpayer. The written evidence disproves this theory. The letter of September 12, 1919, written by Professor Wilgus to the Booth Publishing Co., and a copy of which was sent to R. T. Dobson, discloses that negotiations were already well under way with the Booth Publishing Co. Irrespective of this fact, there are several outstanding facts we should not overlook.

In the first place, R. T. Dobson was, for all practical purposes, the sole stockholder, director, and owner of the business, there being but two outstanding shares for qualifying purposes. In the second place, it is very apparent that J. A. Dobson (his wife), D. T. Dobson, Jr. (his son), and Angela Dobson, (wife of his son),

performed no services and were in no way instrumental in securing the sale of the property. R. T. Dobson, as sole owner, had to finally agree to the terms of the sale, but performed no services in securing the buyer. Professor Wilgus was the sole factor in bringing the buyer and seller together and closing the transaction. His compensation is not in dispute. Why then should a liberal commission be paid to third parties who clearly performed no services and had nothing to do with the transaction? Stripping the transaction of all legal formalities, it appears that the father agreed to pay himself, his wife, his son, and his son's wife $5,000 each, as the result of a sale negotiated by Professor Wilgus, and as a mere distribution as the profits of that sale.

We are of the opinion that the payments were not ordinary and necessary business expenses and that the amount thereof should be restored to the income of the taxpayer for the taxable year in question.

The Commissioner having admitted the other assignment of error, the deficiency should be computed in accordance with such admission.

*Order of redetermination will be entered on 15 days' notice, under Rule 50.*